T.C. Memo. 1999-196


UNITED STATES TAX COURT


IRV C. JAFFE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ARLENE K. JAFFE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24780-97, 2220-98.          Filed June 17, 1999.


Irv C. Jaffe, pro se.

Arlene K. Jaffe, pro se.

<u>George D. Curran</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COUVILLION, <u>Special Trial Judge</u>:  These consolidated cases were heard pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

Respondent determined a deficiency of $2,775 in the 1994 Federal income tax of petitioner Irv C. Jaffe (Mr. Jaffe) and a deficiency of $3,431 in the 1994 Federal income tax of petitioner Arlene K. Jaffe (Ms. Jaffe).  In an answer to Mr. Jaffe's petition, respondent asserted an increased deficiency for unreported dividend income of $11,497.31 from a money market account held jointly by Mr. Jaffe and Ms. Jaffe.  Respondent also asserted, in an answer to Ms. Jaffe's petition, an increased deficiency for unreported dividend income of $15,543 from the same money market account.

The issues for decision are:  (1) Whether $18,500 received by Ms. Jaffe during 1994 constitutes alimony or separate maintenance payments includable in her income under section 71 and deductible by Mr. Jaffe under section 215, and (2) what portion of the dividend income from the jointly owned money market account for 1994 is includable in the respective gross income of Mr. Jaffe and Ms. Jaffe.

FINDINGS OF FACT

---

[1]  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time Mr. Jaffe's petition was filed, his legal residence was Bala Cynwyd, Pennsylvania. At the time Ms. Jaffe's petition was filed, her legal residence was Narberth, Pennsylvania.

Mr. Jaffe and Ms. Jaffe were married on May 7, 1961. They had two children, both of whom are adults. Mr. Jaffe is a certified public accountant and is the name partner in an accounting firm. He has practiced public accounting for at least 30 years. In his practice, he has prepared income tax returns for clients. For several years, Mr. Jaffe has taught courses as an adjunct professor in managerial and tax accounting at several colleges and universities, including Temple University, Penn State University, La Salle, and Drexel University. Ms. Jaffe has a bachelor's degree in education and taught at a junior high school from 1960 to 1963. After that, she engaged herself as a homemaker, raising the children. She returned to work in 1977, working 20 hours per week at a gift shop.

On October 9, 1991, Ms. Jaffe filed suit for divorce against Mr. Jaffe in the Court of Common Pleas of Montgomery County, Pennsylvania (Court of Common Pleas). On February 26, 1992, the Domestic Relations Court of Montgomery County, Pennsylvania

(Domestic Relations Court), issued an order that Mr. Jaffe pay Ms. Jaffe $250 per week alimony pendente lite. On June 4, 1992, the Domestic Relations Court amended that order to provide that Mr. Jaffe pay Ms. Jaffe $900 per week alimony pendente lite retroactive to October 22, 1991. On September 4, 1992, the Court of Common Pleas vacated the order of June 4, 1992, and issued an "agreed order" that provided, in pertinent part:

> WHEREAS, the parties have a Vanguard Account, account #9841402936, ("Vanguard Account") [Vanguard Account] titled in both names as tenants by entireties, with an approximate balance of $542,347.95 as of April 9, 1992;
>
> NOW, THEREFORE, the parties, through their respective attorneys, Charles C. Shainberg, Esquire, for Defendant [Mr. Jaffe], and Nancy Akbari, Esquire, for Plaintiff [Ms. Jaffe], do hereby STIPULATE and AGREE that:
>
> 1. Effective August 3, 1992, Plaintiff shall be permitted to withdraw up to Five Hundred Dollars ($500) per week from the Vanguard Account. Of this amount, the amount which is ultimately determined to be payable as alimony pendente lite, will be credited against Defendant's share at equitable distribution. Defendant shall be responsible for income taxes due on the amount which is ultimately adjudicated to have been his alimony pendente lite obligation. As this payment shall be made directly from the account established pursuant to paragraph 4 hereof, no payments shall be payable through the Domestic Relations Section.

Other provisions of the agreed order allowed both Mr. and Ms. Jaffe to make withdrawals out of the Vanguard account for matters unrelated to this litigation, such as, for example, payment of

their attorneys, payment of the Jaffes' 1991 income taxes, and insurance, property taxes, and maintenance of the marital home. The agreed order was signed by the attorneys for Mr. Jaffe, Ms. Jaffe, and by the judge. At some point, the date of which is not evident from the record, it developed that there were no funds in the Vanguard account No. 9841402936 described in the agreed order because Mr. Jaffe had surreptitiously closed the account. Ms. Jaffe instituted contempt proceedings against Mr. Jaffe, and, after a period of incarceration of Mr. Jaffe, the funds were restored. On May 6, 1993, the restored funds were placed in another money market reserve account with Vanguard, in the names of Mr. Jaffe and Ms. Jaffe but with their respective attorneys as escrow agents. That account bore the number 09886709322.[2] As of January 31, 1993, that account had a balance of $495,157.70. Pursuant to the agreed order, Ms. Jaffe made withdrawals out of the aforesaid Vanguard money market reserve account, including, during 1994, the amount of $18,500, which is at issue in this case.

The Vanguard account was owned by Mr. Jaffe and Ms. Jaffe as tenants by the entirety.

---

[2]   No evidence was offered to establish whether the closed Vanguard account No. 9841402936 was also a money market reserve account.

On September 13, 1994, the Court of Common Pleas issued the following decrees and orders:

(1) A divorce decree,

(2) An order with respect to the alimony (the alimony order),

(3) A decree with respect to a property settlement (the property settlement order) between Mr. and Ms. Jaffe, and

(4) An opinion.

The alimony order of September 13, 1994, provided, in pertinent part:

1) Mrs. Jaffe's request for Alimony is DENIED.

2) Mrs. Jaffe's request for <u>Alimony Pendente Lite</u> is GRANTED in part and DENIED in part.

    i. The $500.00 per week that Mrs. Jaffe has been receiving pursuant to the parties agreement effective August 3, 1992, shall be deemed an award of <u>Alimony Pendente Lite</u>.

    ii. Any additional request for <u>Alimony Pendente Lite</u> is DENIED.

    \*     \*     \*     \*     \*     \*     \*

1) Mrs. Jaffe shall receive the following marital assets:

    a. The entire Vanguard Account No. 9841402936, less $98,000.00 which is husband's inheritance.

As reflected in the property settlement order, Mr. Jaffe and Ms. Jaffe each received various other retirement and investment

assets, contents of the marital home, and automobiles in their respective possession.  The marital home and other real estate holdings were awarded to Mr. Jaffe.[3]

As noted earlier, Ms. Jaffe withdrew $18,500 from the Vanguard money market reserve account during 1994.  She did not include this amount as income on her 1994 Federal income tax return.  Mr. Jaffe, on the other hand, claimed an alimony deduction of $18,500 on his 1994 Federal income tax return.  The Vanguard money market reserve account earned $15,543.37 in dividends during 1994.  An IRS Form 1099 was issued by Vanguard to Mr. Jaffe for this amount; however, neither Mr. Jaffe nor Ms. Jaffe included such income on their respective returns for 1994.

In separate notices of deficiency, respondent disallowed Mr. Jaffe's alimony deduction of $18,500, for the year at issue, and included $18,500 in alimony income in Ms. Jaffe's gross income for that year.[4]  Additionally, respondent made a computational

---

[3]    The Court notes that the alimony order refers to Vanguard account No. 9841402936.  That is an apparent error because, as noted earlier, Mr. Jaffe had closed that account and later restored those funds to the escrowed Vanguard money market reserve account on May 6, 1993.  The Court is satisfied that the reference in the alimony order to the Vanguard account is to the money market reserve account No. 09886709322.  The identity of the account was not an issue at trial.

[4]    The Commissioner may issue conflicting notices of deficiencies, for instance, in a case where payments may or may not constitute alimony.  The Commissioner's practice of issuing inconsistent deficiency notices in order to protect the
(continued...)

adjustment to Ms. Jaffe's itemized deduction for medical and dental expenses, due to the inclusion of $18,500 alimony in her gross income for 1994.  As noted earlier, respondent filed answers in each case asserting increased deficiencies against Mr. and Ms. Jaffe for the unreported dividend income.

OPINION

The Alimony Issue.

At issue here is the nature of the withdrawals made by Ms. Jaffe during 1994 out of the jointly held account with Mr. Jaffe. Amounts received as alimony or separate maintenance are includable in the recipient's gross income under sections 61(a)(8) and 71(a) and are deductible by the payor under section 215(a) in the year paid.  On the other hand, payments representing a property settlement are neither deductible to the payor nor includable in income by the recipient.  See sec. 1041.

For tax purposes, the term "alimony or separate maintenance payment" is defined in section 71(b)(1) as any payment in cash meeting the following four criteria:

---

[4](...continued)
Government's right to tax revenue is recognized as a valid practice.  See, e.g., Gerardo v. Commissioner, 552 F.2d 549, 555-556 (3d Cir. 1977), affg. in part and revg. in part on another ground T.C. Memo. 1975-341.

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Thus, the subject $18,500 received by Ms. Jaffe during 1994 constitutes alimony, deductible by Mr. Jaffe and includable in Ms. Jaffe's gross income, only if all four criteria of section 71(b)(1) are met.

Respondent took the position that the $18,500 in withdrawals by Ms. Jaffe did not constitute alimony, and, therefore, such amounts were not includable in her gross income and, correspondingly, were not deductible by Mr. Jaffe. Respondent based this position on two grounds. First, there was no definitive characterization of the withdrawals in the agreed order of September 4, 1992. The agreed order stated that such amounts "ultimately determined to be payable as alimony pendente lite will be credited against defendant's [Mr. Jaffe] share at

equitable distribution". As such, respondent contends, the withdrawals by Ms. Jaffe did not constitute alimony because the agreed order does not satisfy section 71(b)(1)(A). Respondent further argued that, although the later divorce decree did characterize the withdrawals by Ms. Jaffe as alimony pendente lite, the divorce decree is dated September 13, 1994, and, therefore, could not retroactively make or define the prior withdrawals as deductible alimony.

Respondent's second position was that the agreed order of September 4, 1992, provided that Mr. Jaffe "shall be responsible for income taxes due on the amount which is ultimately adjudicated to have been alimony pendente lite". Respondent argued that this language constituted a designation under section 71(b)(1)(B) that the withdrawals by Ms. Jaffe were not includable in her gross income and were not deductible by Mr. Jaffe.

Mr. Jaffe's position, asserted in a pretrial memorandum, as well as in his testimony at trial, was that the alimony order dated September 13, 1994, stated unequivocally that the withdrawals by Ms. Jaffe were alimony pendente lite and that statement alone entitled him to an alimony deduction.

Ms. Jaffe argued that the withdrawals were a division of the marital estate and, therefore, did not constitute alimony.

The Court notes that the withdrawals by Ms. Jaffe were made out of the Vanguard account, which constituted marital property

of Mr. Jaffe and Ms. Jaffe under Pennsylvania law.  Each party owned an undivided one-half interest in this asset.  One-half of the funds being withdrawn, therefore, constituted Ms. Jaffe's funds.  As such, this was a distribution of her own funds.  That amount is not deemed to be an award of alimony.  Accordingly, one-half of the $18,500 in withdrawals is not includable in Ms. Jaffe's gross income under section 71(a), and that same amount is not deductible by Mr. Jaffe under section 215(a).

With respect to the other one-half of the $18,500, the Court rejects respondent's position that there was no definitive characterization of the withdrawals in the agreed order of September 4, 1992.  The alimony order of September 13, 1994, confirmed that the withdrawals were alimony pendente lite; i.e., that they were required for the support and maintenance of Ms. Jaffe.  The September 13, 1994, alimony order defining the withdrawals as alimony pendente lite, coupled with the agreed order of September 4, 1992, satisfied the requirements of section 71(b)(1)(A).

The agreed order of September 4, 1992, states:  "Defendant [Mr. Jaffe]  shall be responsible for income taxes due on the amount which is ultimately adjudicated to have been his alimony pendente lite obligation."  Respondent takes the position that this language constitutes a designation under section 71(b)(1)(B)

that the withdrawals by Ms. Jaffe are not includable in her gross income and are not deductible by Mr. Jaffe.

Under section 71(b)(1)(B), if a divorce or separation agreement designates that payments by the payor-spouse are not deductible under section 215, and that such payments are not includable in the gross income of the payee-spouse under section 71, such amounts are not alimony under section 71(a) and, therefore, are not includable in the recipient's gross income and are not deductible by the payor.  In the case here, there was no such designation.  Although the agreed order of September 4, 1992, provided that Mr. Jaffe "shall be responsible for income taxes due on the amount which is ultimately adjudicated to have been his alimony pendente lite obligation", such language, in the view of the Court, does not suffice to constitute a designation for purposes of section 71(b)(1)(B).  Cf. <u>Estate of Goldman v. Commissioner</u>, 112 T.C. ___ (1999); <u>Richardson v. Commissioner</u>, T.C. Memo. 1995-554, affd. 125 F.3d 551 (7th Cir. 1997).  The Court, therefore, rejects respondent's argument that the agreed order of September 4, 1992, constituted a designation within the purview of section 71(b)(1)(B).  Accordingly, as to one-half of the withdrawals by Ms. Jaffe during 1994, section 71(b)(1)(B) does not apply to make those withdrawals nondeductible by the payor-spouse nor preclude such withdrawals from being included in the gross income of the recipient spouse, Ms. Jaffe.

The Court finds it unnecessary to pass upon the requisites of section 71(b)(1)(C) and (D) because no questions were raised by the parties as to those provisions. It is the Court's holding, therefore, that one-half of the $18,500 withdrawn by Ms. Jaffe from the Vanguard account during 1994 constituted alimony under section 71(a), and, therefore, such amount is includable in her gross income for 1994. Correspondingly, that same amount is deductible by Mr. Jaffe under section 215(a).

The Dividend Income Issue.

The dividend income at issue arises from the aforementioned Vanguard Account. The dividend income earned by the Vanguard Account from January 1, 1994, through the close of 1994 totaled $15,543. The Vanguard Group issued a Form 1099-DIV (Form 1099) to "Nancy Akbari and Susan Gantman, Escrow Agents, Irv C. Jaffe and Arlene Jaffe", for 1994, reporting $15,543.37 in ordinary dividends earned on the Vanguard Account for 1994. The Form 1099 referenced Mr. Jaffe's taxpayer identification number. Neither Mr. Jaffe nor Ms. Jaffe reported this income on their respective Federal income tax returns for 1994. Neither petitioner disputes that the Vanguard Account earned $15,543 in dividend income during 1994.

Section 61(a) provides that gross income includes "all income from whatever source derived," unless otherwise provided. More specifically, section 61(a)(7) provides that dividends are

included in gross income.  A fundamental principle of tax law is that income is taxed to the person who earns it, when he earns it or derives it from property he owns.  See Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949); Lucas v. Earl, 281 U.S. 111 (1930).  Moreover, determining the ownership of property is a question of fact.  See Hang v. Commissioner, 95 T.C. 74, 80 (1990).  The actual control over the property and the enjoyment of profits from such property are of paramount importance in establishing ownership.  See Taylor v. Commissioner, 27 T.C. 361, 368 (1956), affd. 258 F.2d 89 (2d Cir. 1958).

The entire balance of the Vanguard Account, with the exception of $98,000, was awarded to Ms. Jaffe in the property settlement order dated September 13, 1994.[5]  Consequently, after the date of divorce, Ms. Jaffe clearly held exclusive ownership, control, and enjoyment of the Vanguard Account, and, thus, any income earned by the account after this date is includable in her 1994 gross income.  Accordingly, the Court holds that the dividend income earned by and paid to the Vanguard Account after

---

[5]    The $98,000 awarded to Mr. Jaffe was removed from the Vanguard Account shortly after the date of divorce; thus, the Court does not consider any dividends earned on this $98,000 between the date of divorce and the date of the funds' removal from the account to be significant.  Moreover, any dividends so earned were paid to the Vanguard Account after the date of divorce and, thus, were under the exclusive ownership, control, and enjoyment of Ms. Jaffe.

September 13, 1994, i.e., $4,045.69, is includable in the gross income of Ms. Jaffe for 1994.

However, until the date of the divorce, the Vanguard Account was owned by Mr. Jaffe and Ms. Jaffe as tenants by the entirety, as noted earlier, until September 13, 1994.[6] Moreover, until the date of divorce, the Vanguard Account was marital property subject to equitable distribution by the Court of Common Pleas.[7]

---

[6] There is no evidence in the record to indicate that either Mr. Jaffe or Ms. Jaffe held greater than an undivided one-half interest in the Vanguard Account due to a disproportionate contribution of assets.

[7] There is apparently no dispute that the Vanguard account was "marital property" under Pennsylvania law, which is defined as:

> all property acquired by either party during the marriage, including the increase in value, prior to the date of final separation, of any nonmarital property acquired pursuant to paragraphs (1) and (3), except:
>
> > (1) Property acquired prior to marriage or property acquired in exchange for property acquired prior to the marriage.
> >
> > (2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.
> >
> > (3) Property acquired by gift, except between spouses, bequest, devise or descent.
> >
> > (4) Property acquired after final separation until the date of divorce, except for property acquired in exchange for marital assets. * * *

23 Pa. Cons. Stat. Ann. sec. 3501(a) (West 1991). Further, "All real or personal property acquired by either party during the
(continued...)

All dividends earned by the Vanguard Account were credited to the account on a monthly basis, at the end of each month, and were therefore available for enjoyment by both account owners, i.e., Mr. Jaffe and Ms. Jaffe, and subject to equitable distribution, up to the date of the divorce.[8] On the date of the divorce, dividends totaling $11,497.31 had been credited to the Vanguard Account since the beginning of 1994. Since Mr. Jaffe and Ms. Jaffe each owned and enjoyed a one-half interest in the Vanguard Account up to the date of divorce, both Mr. Jaffe and Ms. Jaffe, equally, earned the subject $11,497.31 in dividends. Up to the date of the divorce, both Mr. Jaffe and Ms. Jaffe,

---

[7](...continued)
marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety." Id. sec. 3501(b). This section provides further that the presumption of marital property may be overcome by showing that the property was acquired by any of certain methods, including those listed as (1) through (4) above.

[8] Mr. Jaffe argued that the Vanguard Account was not available for his enjoyment in 1994 due to the Court of Common Pleas' freezing the assets of such account. Mr. Jaffe's argument overlooks the fact that the Vanguard Account was held by him and Ms. Jaffe as tenants by the entirety, thereby affording each spouse a right of survivorship over the assets of the account. Thus, had Ms. Jaffe died prior to the issuance of the divorce decree, exclusive ownership and enjoyment of the entire balance of the Vanguard Account would have passed to Mr. Jaffe by operation of law, and vice versa. Both Mr. Jaffe and Ms. Jaffe maintained ownership and enjoyment of the Vanguard Account, despite the freezing of assets by the Court of Common Pleas, until such time as the tenancy by the entirety was severed by the divorce decree.

through their tenancy by the entirety ownership status, had equal control over the dividends earned by the Vanguard Account.

Accordingly, one-half of the $11,497.31 in dividend income credited to the Vanguard Account from January 1, 1994, through August 31, 1994, is includable in the gross income of Mr. Jaffe for 1994, and, likewise, one-half of such dividend income is includable in the gross income of Ms. Jaffe for 1994.

Decisions will be entered under Rule 155.