T.C. Memo. 2019-105

UNITED STATES TAX COURT

MARIA M. FAUST, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27018-17.                          Filed August 20, 2019.

Maria M. Faust, pro se.

<u>Scott A. Hovey</u> and <u>Jeffrey E. Gold</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COPELAND, <u>Judge</u>:  Respondent determined a deficiency in petitioner's

Federal income tax and a penalty as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|------------|----------------------|
| 2015 | $4,062 | $812.40 |

[*2] The issues for decision are:

1.      whether petitioner failed to include as taxable income $27,245[1] received as alimony or separate maintenance from her ex-husband during the 2015 tax year under the terms of a pendente lite order and subsequent stipulation agreement and divorce decree.  We hold that the $27,245 was, for Federal tax purposes, alimony and separate maintenance under section 71(b)[2] and therefore taxable income which petitioner failed to include; and

2.      whether petitioner is liable for an accuracy-related penalty of $812.40, pursuant to section 6662(a) for an underpayment attributable to negligence[3] for the 2015 tax year.  We hold that petitioner is not liable for the penalty because she acted with reasonable cause and in good faith.

---

[1]The notice of deficiency determined an adjustment of $27,252.  It appears that, in calculating petitioner's adjustment, respondent used the monthly alimony amount of $2,271 pursuant to a court order.  However, a later agreement reduced the monthly amount to $2,270.  As a result, respondent conceded $7 of the alimony adjustment in his seriatim answering brief.

[2]All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[3]The notice of deficiency determined the sec. 6662(a) penalty as applicable on one or more of the sec. 6662(b)(1), (2), (3), or (6) grounds, but, on brief, respondent addressed only sec. 6662(b)(1).  Therefore we do not address the sec. 6662(b)(2), (3), or (6) alternative.

[*3]                            FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

1.    Petitioner

Petitioner resided in Washington, D.C., when she filed her petition.

Petitioner immigrated to the United States when she was 21 years old.  She was

provided a Spanish interpreter at trial.  Petitioner previously had Child X, who was

not of the marriage.  Petitioner married Michael T. Faust in 1992.  Petitioner and

Mr. Faust had Child Y during their marriage.  Petitioner did not pursue

postsecondary education and instead served as the full-time care giver to Child X

and Child Y.  The marital couple last resided together in Washington, D.C., where

Mr. Faust was stationed on active duty in the U.S. Navy (Navy).

Petitioner suffered from a history of abuse by her former husband.  On July

12, 2012, the Navy's Family Advocacy Program Case Review Committee

substantiated spousal emotional abuse of petitioner by Mr. Faust.  On August 20,

2012, petitioner and Mr. Faust entered into a consent agreement (Consent

Agreement) whereby Mr. Faust agreed not to "assault, threaten, harass, or stalk"

petitioner.  The couple separated in 2012.

Effective January 1, 2013, the Navy transferred Mr. Faust to Virginia

Beach, Virginia, where he filed for divorce during 2013.  The Circuit Court for the

**[*4]** City of Virginia Beach issued a pendente lite order (Order) on August 2, 2013, requiring Mr. Faust to pay petitioner $2,271 per month beginning on August 2, 2013, and continuing until further order of that court. The Order contains no other provisions regarding the termination of payments and makes no mention of the tax treatment of the payments.

A November 20, 2013, letter from the Director of Social Services at the Family Place, a low-income community center in Washington, D.C., noted that petitioner began participation in a domestic violence support group known as Circle of Latina Women in Action in October 2013. On May 20, 2015, petitioner and Mr. Faust entered into a stipulation agreement (Agreement). The Agreement provides that, beginning on June 1, 2015, Mr. Faust will make monthly spousal support payments of $2,270 to petitioner.[4] The Agreement replaces the August 2, 2013, Order.

Section 3.F. of the Agreement generally addresses Mr. Faust's military retirement pay and provides that petitioner will begin to receive a share of it once Mr. Faust begins to collect it. Section 4 of the Agreement generally covers spousal support and the effect on spousal support when retirement pay begins.

---

[4]Though it may have been a mere rounding matter, the agreement did not explicitly state a reason for the $1 reduction from the $2,271 paid under the Order.

[*5] The Agreement provides that the $2,270 in spousal support is to be reduced by the amount of retirement pay once petitioner begins to receive her share of retirement pay. While in the 2015 tax year no retirement pay was received or applicable, had any such payments been due or received the military retirement payments were to continue only until (1) Mr. Faust no longer has the right to receive military retirement pay, (2) Mr. Faust's death, or (3) petitioner's death.

Further, the Agreement provides that the spousal support shall terminate "upon the death of either party, petitioner's remarriage, petitioner's cohabitation in a relationship analogous to marriage for more than one year * * * or [is] stayed upon * * * [petitioner's] monthly portion of * * * [Mr. Faust's] military retired pay meeting or exceeding $2,270.00 per month." There is no mention of the tax treatment of the spousal support payments in the Agreement. The Agreement does contain a separate paragraph on "Tax Advice", stating that the Agreement may have tax consequences and that each party should obtain independent tax advice.

The Circuit Court for the City of Virginia Beach entered the final divorce decree (Decree) on October 7, 2015. The Decree requires Mr. Faust to pay petitioner $2,270 per month by affirming, ratifying, and incorporating by reference the Agreement. Specifically, paragraph 4 of the Decree copies, with nonsubstantive edits, section 4.b. of the Agreement, which sets forth the terms and

[*6] conditions of Mr. Faust's $2,270 monthly spousal support payments to petitioner and later retirement payments. The Decree states: "Notwithstanding the forgoing [obligation to pay support] Plaintiff's [Mr. Faust's] spousal support obligation shall terminate upon the death of either party." The Decree makes no further mention of the tax treatment of either spousal support payments or military retirement payments.

2.    Petitioner's Tax Return

Petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for the 2015 tax year. She obtained professional assistance from the American Association of Retired Persons' low-income-taxpayer return preparation service at the Chevy Chase Community Center, in Washington, D.C. The Form 1040 reported adjusted gross income of $11,599 and taxable income of $1,299; it did not report payments petitioner received from Mr. Faust under the Order, Agreement, or Decree.

3.    Notice of Deficiency and Petition

Respondent initially denied Mr. Faust a deduction for his payments to petitioner for periods during 2015 covered by the Order but later determined that he was entitled to the deduction on the basis of evidence he presented during the

[*7] examination of his 2015 tax return.  That evidence was later used to begin the examination of petitioner's 2015 tax return.

According to the examination workpapers in petitioner's administrative file, her examination began on May 12, 2017, and on that date the examiner, Ms. Gnehm (Examiner Gnehm), created a "Lead Sheet for the Accuracy Related Penalty 20% Negligence or Disregard of Rules or Regulation (IRC Sec 6662(c))." The examination workpapers state:  "This penalty applies."  The evidence in the record that the penalty was approved by a manager consists of an entry in the Correspondence Examination Automation Support Case Notes (case notes).  An employee of respondent, Laura Sherman, made the following entry to the case notes dated May 18, 2017:  "Negligence Penalty IRC 6662(c) has been approved by manager per IRM 20.1.5.7 Penalty lead sheet prepared per IRM 4.19.13.5.3 and approved.  CEAS non-action note has been input."  At trial respondent established that Ms. Sherman was the direct manager of Examiner Gnehm.  The record also contains a workpaper titled "Negligence or Disregard of the Rules or Regulation Lead Sheet 6662(c)" dated July 31, 2017, which also contains Examiner Gnehm's notes dated May 12, 2017, suggesting the "negligence penalty is appropriate."

The examination workpapers indicate that Examiner Gnehm determined petitioner was subject to income tax on the payments received from Mr. Faust,

[*8] totaling $27,252, as alimony compensation for that year. According to those workpapers, Ms. Gnehm verified through Mr. Faust's bank statements that all payments at issue during 2015 were made to petitioner. On July 31, 2017, Examiner Gnehm sent a letter and Form 4549, Income Tax Examination Changes, to petitioner.

On October 2, 2017, respondent issued the notice of deficiency to petitioner for her 2015 taxable year. The notice determined that petitioner's failure to report $27,252[5] in income received from Mr. Faust resulted in a deficiency of $4,062 and an accuracy-related penalty under section 6662(a) of $812.40.

OPINION

1.    Standard of Review

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct. Welch v. Helvering, 290 U.S. 111, 115 (1933). Rule 142(a) places the burden of proof on the taxpayer unless otherwise provided by statute. The burden of proof shifts to the Commissioner under certain circumstances when a taxpayer comes forth with credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's liability. Sec. 7491(a)(1). Petitioner does

---

[5]The notice of deficiency determined an adjustment of $27,252. As stated supra note 1, respondent conceded $7 of the alimony adjustment in his seriatim answering brief, making the adjustment $27,245 instead.

**[*9]** not contend, nor does the evidence establish, that the burden shifts to respondent under section 7491(a) as to any issue of fact.

2.    <u>Whether Petitioner Failed To Report $27,245 of Taxable Alimony Income</u>

Section 61(a)(8) provides that gross income includes amounts received by a payee spouse as alimony or separate maintenance under section 71(b). Section 215(a) and (b) allows the payor spouse a deduction for the payment of alimony as defined in section 71(b), which provides:

> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>
>> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>>
>> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>>
>> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

If the requirements of section 71(b) are met, then the payment is alimony; if any single requirement is not met, then the payment is not alimony. <u>Jaffe v.</u>

**[*10]** <u>Commissioner</u>, T.C. Memo. 1999-196, 1999 Tax Ct. Memo LEXIS 234, at *9. While alimony, separate maintenance, or other terms may vary from State to State under various State-level domestic relations statutes, the classification or labeling of a payment as alimony or not alimony by the parties or a State court is not conclusive for Federal tax purposes. <u>Hoover v. Commissioner</u>, 102 F.3d 842, 844-845 (6th Cir. 1996), <u>aff'g</u> T.C. Memo. 1995-183; <u>Nelson v. Commissioner</u>, T.C. Memo. 1998-268 (holding that payments satisfying section 71 were alimony for Federal tax purposes regardless of a later State determination that they were a division of marital property). The test is whether the requirements of section 71(b) are satisfied. <u>Hoover v. Commissioner</u>, 102 F.3d at 844-845.

First, section 71(b)(1)(A) requires that "such payment is received by (or on behalf of) a spouse under a divorce or separation instrument". The record before us establishes that all of the payments were actually received by petitioner, as shown by Mr. Faust's bank records. As to whether those payments were made under a divorce or separation agreement, section 71(b)(2) broadly defines a "divorce or separation instrument" as

> (A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,
>
> (B) a written separation agreement, or

[*11]      (C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

The 2015 payments at issue here occurred under (1) the Order (January 1, 2015--May 31, 2015), which is "a decree" within the meaning of section 71(b)(2)(C); (2) the Agreement (June 1, 2015--October 6, 2015), which is a "written separation agreement" within the meaning of section 71(b)(2)(B); and (3) the Decree (October 7, 2015--December 31, 2015), which is a "decree of divorce" within the meaning of section 71(b)(2)(A). Thus, the requirements of section 71(b)(1)(A) were met because all of the payments were actually received under a divorce or separation agreement.

The Court notes that, in the particular context of military retirement pay, additional statutory provisions apply to an award, though the purpose of those provisions is not to address the tax treatment of military benefits. Schuller v. Commissioner, T.C. Memo. 2012-347, at *5-*6. In addition, in 1982 Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA), Pub. L. No. 97-252, 96 Stat. 730 (1982) (codified as amended at 10 U.S.C. sec. 1408 (2012)), which now governs States' authority to award military retirement in divorces and separation agreements. However, because petitioner received no

**[\*12]** military retirement payments during the period at issue, we need not and do not address compliance with USFSPA.

We now turn to section 71(b)(1)(B), which provides that a payment is not alimony if the instrument awarding the payment specifically designates the payment as not includible in gross income and not allowable as a deduction under section 215. A specific designation need not mimic section 71(b)(1)(B) or 215, but the substance of such a designation must be clearly reflected in the instrument. Estate of Goldman v. Commissioner, 112 T.C. 317, 323 (1999), aff'd without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000). Here, the Order, Agreement, and Decree have no such express provisions, are silent as to the specific tax treatment of the payments, and provide no other evidence that a nonalimony designation was intended in substance. The section 71(b)(1)(B) restriction is therefore not applicable here.

Section 71(b)(1)(C) provides that if a legally separated payor spouse and payee spouse reside in the same household, the payments are not alimony or separate maintenance. Petitioner and Mr. Faust have lived separately from one another at least since the Navy transferred Mr. Faust from Washington, D.C., to Virginia Beach on January 1, 2013. In addition, petitioner and Mr. Faust have been "legally separated" at least since the order on August 2, 2013. For purposes

**[*13]** of section 71(b)(1)(C), petitioner and Mr. Faust were legally separated and residing apart from each other at all times during 2015.

Lastly, we address the section 71(b)(1)(D) requirements that (1) there be no payor spouse liability to make payments after the payee spouse's death and (2) there be no payor spouse liability to make any payment (in cash or property) as a substitute for such payments after the payee spouse's death.

The Order requires Mr. Faust to pay petitioner $2,271 per month beginning on August 2, 2013, and continuing until further order of the circuit court. The Order has no other provisions regarding the termination of payments. Va. Code Ann. sec. 20-109(D) (2016) provides: "Unless otherwise provided by stipulation or contract, spousal support and maintenance shall terminate upon the death of either party or remarriage of the spouse receiving support." Thus, Va. Code Ann. sec. 20-109(D) clarifies the spousal support termination date. The Order meets the requirements of section 71(b)(1)(D).

Regarding the Agreement, Mr. Faust has a monthly spousal support obligation of $2,270. That spousal support obligation terminates "upon the death of either party, petitioner's remarriage, petitioner's cohabitation in a relationship analogous to marriage for more than one year." It is also "stayed upon * * *

**[*14]** [petitioner's] monthly portion of * * * [Mr. Faust's] military retired pay meeting or exceeding $2,270.00 per month."

The Agreement also separately sets out a formula for determining how much petitioner is to receive from any future military retirement pay that Mr. Faust receives. The Agreement further directs that the spousal support payments be reduced by any amount petitioner receives under the military retirement pay formula; provided that, in combination, petitioner never receives less than $2,270 per month. Unlike the spousal support payments, the military retirement payments expressly terminate only with (1) Mr. Faust's right to receive the payments; (2) Mr. Faust's death; or (3) petitioner's death. While no military retirement payments were at issue for 2015, we note this requirement, to the extent applicable here, would nevertheless be met ab initio since the payments expressly terminate upon petitioner's death.

Taking the provisions on "spousal support obligation" and "military retired pay" together, there is no outcome under the Agreement where Mr. Faust is liable to make payments beyond petitioner's death. As a result, the Agreement also meets the requirements of section 71(b)(1)(D).

The Decree also requires Mr. Faust to pay $2,270 per month to petitioner by affirming, ratifying, and incorporating by reference the Agreement. Specifically,

**[*15]** paragraph 4 of the Decree copies, with minor edits, section 4.b. of the Agreement, which sets forth that the spousal support payments to petitioner terminate upon her death. The Decree meets the conditions of section 71(b)(1)(D) for the same reasons that the Agreement meets the conditions of section 71(b)(1)(D).

With the Order, Agreement, and Decree each meeting all of the conditions of section 71(b), we must conclude that for Federal tax purposes the payments at issue for 2015 were alimony, which petitioner failed to report.

3. <u>Whether Petitioner Is Liable for a Penalty Pursuant to Section 6662(a)</u>

Section 6662(a) and (b)(1) imposes an accuracy-related penalty equal to 20% of the portion of an underpayment of tax required to be shown on a return that is attributable to "[n]egligence or disregard of rules or regulations." Negligence includes "any failure to make a reasonable attempt to comply with the provisions of this title". Sec. 6662(c). We have defined negligence as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See <u>Allen v. Commissioner</u>, 92 T.C. 1, 12 (1989), <u>aff'd</u>, 925 F.2d 348 (9th Cir. 1991); <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985).

The Commissioner bears the burden of production with respect to any accuracy-related penalty under section 6662(a) determined in a notice of

**[*16]** deficiency. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To satisfy the burden of production, "the Commissioner must come forward with sufficient evidence indicating that it is appropriate to impose" the penalty. See Higbee v. Commissioner, 116 T.C. at 446. The Commissioner's burden of production under section 7491(c) includes establishing compliance with the supervisory approval requirement of section 6751(b). Clay v. Commissioner, 152 T.C. __, __ (slip op. at 39) (Apr. 24, 2019); Graev v. Commissioner, 149 T.C. 485, 492-493 (2017), supplementing and overruling in part 147 T.C. 460 (2016); see also Chai v. Commissioner, 851 F.3d 190, 222 (2d Cir. 2017) (citing Higbee v. Commissioner, 116 T.C. at 446), aff'g in part, rev'g in part T.C. Memo. 2015-42.

Petitioner would not be liable for the accuracy-related penalty under section 6662(a) unless the record showed that the penalty was properly determined by respondent. See Graev v. Commissioner, 149 T.C. at 493. In order to meet his burden of production for section 6662(a) accuracy-related penalty, respondent must show that there was written supervisory approval of the initial penalty determination. See secs. 6751(b)(1), 7491(c); Clay v. Commissioner, 152 T.C. at __ (slip op. at 43-44); Graev v. Commissioner, 149 T.C. at 493 n.14 (citing Chai v. Commissioner, 851 F.3d at 221).

[*17] Finally, the section 6662(a) penalty does not apply to any portion of an underpayment "if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith" with respect to it.  Sec. 6664(c)(1).

Respondent determined that the $4,062 underpayment resulting from the inclusion of $27,252[6] in alimony as gross income was subject to the section 6662(a) accuracy-related penalty.

We address supervisory approval and reasonable cause in turn.

a.    Supervisory Approval

Section 6751(b) requires managerial approval of penalties, in writing.  Specifically, section 6751(b)(1) provides:  "No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate."  In Clay v. Commissioner, 152 T.C. at __ (slip op. at 43-44), we answered the question of what constitutes an initial determination.  We held that an initial determination occurs no later than when "proposed adjustments are communicated to the taxpayer formally as part of a communication that advises the taxpayer that penalties will be proposed and giving the taxpayer the right to appeal them with

---

[6]As noted previously, respondent now concedes $7 of this amount.

**[*18]** Appeals * * * [At that point] the issue of penalties is officially on the table."
Id. Supervisory approval must be obtained before that moment to achieve the congressional intent of section 6751(b): "to prevent IRS agents from threatening unjustified penalties to encourage taxpayers to settle". Chai v. Commissioner, 851 F.3d at 219.

The record contains evidence that the examiner filled out a Lead Sheet for Accuracy-Related Penalty 20% Negligence Disregard of the Rules or Regulation (IRC Sec 6662(c)) on May 12, 2017. The record also contains case notes indicating that a Ms. Sherman approved the penalty on May 18, 2017, and respondent presented credible testimony that Ms. Sherman was the examiner's direct manager. This information was communicated to petitioner by letter dated July 31, 2017. We find, as a result, that respondent has satisfied his burden of production with respect to section 6751(b)(1).

b. Reasonable Cause

Even though the Commissioner has met his burden of production, the section 6662(a) penalty still may not be imposed if the taxpayer produces persuasive evidence that she "acted with reasonable cause and good faith" which can be determined in light of petitioner's "experience, knowledge, and education." Higbee v. Commissioner, 116 T.C. at 448-449; see sec. 6664(c)(1). The

**[\*19]** determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that indicate reasonable cause and good faith include reliance on the advice of a tax professional or an honest misunderstanding of the law that is reasonable in the light of all the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.; see Higbee v. Commissioner, 116 T.C. at 449.

During the trial petitioner understood the questions asked of her with the assistance of a translator; however, we recognize that English is not petitioner's first language and that she is of limited English proficiency. In view of petitioner's limited educational background and limited English, combined with the complicated series of the Order, Agreement, and Decree, some confusion is unsurprising. Even respondent was initially confused enough to consider payments predating the Agreement as nondeductible to Mr. Faust (and therefore not alimony).

On top of that, we recognize petitioner's credible testimony with regard to her mental state, as further evidenced by the Consent Agreement, the Navy's substantiation of spousal emotional abuse, and her participation in a domestic

[*20] violence support group.  Lastly, we note that petitioner obtained what low-income-taxpayer professional assistance she could in preparing her tax return.

Taking all of the facts and circumstances together, the Court believes that petitioner made honest and reasonable efforts to determine her 2015 Federal income tax liability and that the underpayment resulted from an honest misunderstanding of law that is reasonable in the light of her limited English proficiency, education, history of abuse at the hands of her ex-husband, and the multitude of complicated facts and unusual circumstances surrounding this particular case.  We conclude that petitioner has proven that she acted with reasonable cause and in good faith and is not liable for the accuracy-related penalty for 2015.

To reflect the foregoing,

Decision will be entered

under Rule 155.